Slip Op. 26-77

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| COMMITTEE OVERSEEING ACTION FOR LUMBER INTERNATIONAL TRADE INVESTIGATIONS OR NEGOTIATIONS, | |
| Plaintiff, | |
| and | |
| MOBILIER RUSTIQUE (BEAUCE) INC., ET AL., | |
| Consolidated Plaintiffs, | Before: Mark A. Barnett, Chief Judge Consol. Court No. 19-00122 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and | |
| FONTAINE INC., ET AL., | |
| Defendant-Intervenors. | |

## OPINION

[Sustaining the U.S. Department of Commerce's fourth remand results in the countervailing duty expedited review of certain softwood lumber products from Canada]

Dated: July 21, 2026

Sophia J.C. Lin, Picard Kentz & Rowe LLP, of Washington, DC, for Plaintiff Committee Overseeing Action for Lumber International Trade Investigations or Negotiations.

Sosun Bae, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. Also on the brief were Brett A. Shumate, Assistant Attorney General, Patricia M. McCarthy, Director, and Claudia Burke, Deputy Director. Of counsel on the brief was Jesus N. Saenz,

Assistant Chief Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Edward M. Lebow, Haynes and Boone, LLP, of Washington, DC, for Defendant-Intervenors Les Produits Forestiers D&G Ltée and Les Produits Forestiers Portbec Ltée.

 Barnett, Chief Judge:  This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") fourth redetermination upon remand in the countervailing duty expedited review of certain softwood lumber products from Canada.  See Final Results of Redetermination Pursuant to Ct. Remand (Apr. 17, 2026) ("Fourth Remand Results"), ECF No. 348-1; Certain Softwood Lumber Prods. From Can., 84 Fed. Reg. 32,121 (Dep't Commerce July 5, 2019) (final results of countervailing duty expedited rev.) ("Final Results"), ECF No. 99-5, and accompanying Issues and Decision Mem., C-122-858 (June 28, 2019) ("I&D Mem."), ECF No. 99-6.[1] Commerce issued the Fourth Remand Results in response to the court's opinion in Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States (Coalition X), 49 CIT __, 813 F. Supp. 3d 1319 (2025).[2]

---

[1] The Final Results relate to the underlying countervailing duty order, published as Certain Softwood Lumber Products From Canada, 83 Fed. Reg. 347 (Dep't Commerce Jan. 3, 2018) (am. final aff. countervailing duty determination and countervailing duty order) ("CVD Order").  The administrative record for the Fourth Remand Results is contained in a Confidential Remand Record, ECF No. 349-2, and a Public Remand Record ("4PRR"), ECF No. 349-3.  Defendant-Intervenors submitted a joint appendix containing record documents cited in parties' remand comments.  [Public] J.A. to Cmts. After Remand ("4RPJA"), ECF No. 355.  The court also cites to record documents from prior proceedings in this case.  Public Remand Record for the Third Remand Results ("3PRR"), ECF No. 310-2; Confid. Third Remand J.A. ("3RCJA"), ECF No. 321.

[2] Familiarity with the background information contained in Coalition X and all prior opinions is presumed.

In *Coalition X*, the court remanded Commerce's calculation of the subsidy rate for Les Produits Forestiers D&G Ltée ("D&G") and its cross-owned affiliates, including Les Produits Forestiers Portbec Ltée ("Portbec").[3]  813 F. Supp. 3d at 1330.  The court held that Commerce abused its discretion when it declined to reopen the record on remand to accept information from D&G/Portbec documenting Portbec's purchases of lumber on a duty paid basis in the United States during the period of review.  *See id.* at 1327–29.  On remand, Commerce reopened the record and permitted D&G/Portbec to submit questionnaire responses regarding those purchases.  Fourth Remand Results at 7.  While "D&G/Portbec did not provide all the information and documentation requested," Commerce concluded that the Respondents provided information that was "sufficiently representative of Portbec's purchases" of lumber imported "into the United States from other unaffiliated Canadian suppliers," and "which [was] subsequently resold to U.S. customers."  *Id.* at 11.  Commerce thus "netted out C$5,317,890 from the category 'Lumber (Unaffiliated Canadian Suppliers) – Resold,'" *id.*, and revised D&G/Portbec's overall subsidy rate down to 1.05 percent, *id.* at 14.  While the rate is lower than the 1.75 percent subsidy rate Commerce calculated in the prior remand, *id.* at 6, D&G/Portbec's overall subsidy rate remains above *de minimis*, *id.* at 14.[4]

---

[3] D&G and Portbec are referred to herein as "D&G/Portbec" or "the Respondents."
[4] On remand, D&G/Portbec sought to submit information regarding secondary processing costs with respect to remanufactured lumber they claimed should also be deducted from the subsidy calculations.  *See* Fourth Remand Results at 7–8.  Commerce concluded that D&G/Portbec forfeited this argument by not raising it during the expedited review or any prior remand proceeding.  *See id.* at 8.  Commerce nevertheless analyzed the information and found no further deduction warranted.  *Id.* at

D&G/Portbec filed comments in partial opposition to the Fourth Remand Results. Cmts. of Def.-Ints. D&G/Portbec in Partial Opp'n to Final Results of Redetermination Pursuant to Ct. Remand ("D&G Opp'n Cmts."), ECF No. 350.  Defendant United States ("the Government") and Plaintiff Committee Overseeing Action for Lumber International Trade Investigations or Negotiations ("the Coalition") each filed comments in support of the Fourth Remand Results.  Def.'s Cmts. in Supp. of Remand Redetermination ("Def. Reply Cmts."), ECF No. 354; Pl.'s Cmts. in Supp. of Final Results of Redetermination to Ct. Remand ("Pl. Reply Cmts."), ECF No. 353.  For the following reasons, the court sustains Commerce's Fourth Remand Results.

## JURISDICTION AND STANDARD OF REVIEW

The court exercises jurisdiction pursuant to 28 U.S.C. § 1581(i)(1)(D) (2018 & Supp. II 2022).[5]  The court reviews an action commenced pursuant to 28 U.S.C. § 1581(i) in accordance with the standard of review set forth in the Administrative Procedure Act, 5 U.S.C. § 706, as amended.  *See* 28 U.S.C. § 2640(e).  Section 706 directs the court, *inter alia*, to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

---

12–13.  D&G/Portbec did not challenge that determination before Commerce, *see id.* at 20, and do not raise the issue before the court.

[5] Citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2018 edition unless otherwise stated.

BACKGROUND

I.      **Relevant Legal Authorities**

A.      **Supplier Subsidies**

Pursuant to 19 U.S.C. § 1677-1, an "'upstream subsidy' means any countervailable subsidy, other than an export subsidy, that—(1) is paid or bestowed by an authority . . .  with respect to a product (hereafter in this section referred to as an 'input product') that is used in the same country as the authority in the manufacture or production of merchandise which is the subject of a countervailing duty proceeding."  19 U.S.C. § 1677-1(a)(1) (sometimes referred to as the upstream subsidy provision). Section 351.525(c) of Commerce's regulations directs Commerce to cumulate "[b]enefits from subsidies provided to a trading company which exports subject merchandise" with "benefits from subsidies provided to the firm which is producing subject merchandise that is sold through the trading company, regardless of whether the trading company and the producing firm are affiliated."  19 C.F.R. § 351.525(c) (2020) (sometimes referred to as the trading company regulation) .

B.      **Administrative Exhaustion and Forfeiture of Arguments**

"[W]here appropriate," the court shall "require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).[6]  The doctrine of administrative exhaustion requires a

---

[6] The court has previously stated that requiring exhaustion is appropriate in this 28 U.S.C. § 1581(i) case "given that the court reviews Commerce's decision on the record developed before the agency, and that process included the opportunity" to present arguments to the agency in the first instance.  *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States* (*Coalition VII*), 48 CIT __, __, 701 F. Supp. 3d 1334, 1356 n.42 (2024).

party to raise issues "at the time appropriate under [an agency's] practice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952). The exhaustion requirement applies to remand proceedings. *See, e.g.*, *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383–84 (Fed. Cir. 2008). Exhausting arguments "protect[s] administrative agency authority and promot[es] judicial efficiency." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). "[S]keletal 'notice'" to Commerce of an argument is not enough to further these purposes; "[a]rguments must be presented *in toto* for this entire judicial review process to work sensibly." *Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S. v. United States*, 41 CIT __, __, 277 F. Supp. 3d 1346, 1353 (2017).

The doctrine of forfeiture (sometimes referred to as waiver),[7] requires a litigant to adequately develop their arguments for judicial consideration; arguments referenced in a footnote or in an otherwise conclusory fashion may be "deemed abandoned." *See United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320, 1328 (Fed. Cir. 2013) (quoting *United States v. Charles*, 469 F.3d 402, 408 (5th Cir. 2006)); *see also Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1385 (Fed. Cir. 1998) (declining to consider an argument referenced in a footnote and explained in an appendix).

---

[7] Forfeiture is "the failure to make the timely assertion of a right," whereas waiver is defined as the "intentional relinquishment or abandonment of a known right"). *In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020).

## II.        Relevant Factual and Procedural History

For the *Final Results*, Commerce declined to investigate upstream subsidies to D&G/Portbec's unaffiliated Canadian suppliers because, at the time, the agency characterized lumber that underwent further processing as "inputs to the respondents' exports to the United States" and the Coalition had not submitted an upstream subsidy allegation.  I&D Mem. at 38.  The court remanded Commerce's *Final Results* for the agency to reconsider or further explain its determination to treat lumber that is within the class or kind of covered merchandise as an input to the subject merchandise.  *Coalition VII*, 701 F. Supp. 3d at 1351–52 & nn.33–36.  The court noted that Commerce's treatment in this proceeding of "inputs that otherwise are subject merchandise" as products "'upstream' to the subject merchandise exported to the United States" for purposes of 19 U.S.C. § 1677-1(a)(1) conflicted with the agency's past practice and lacked explanation.  *Id.* at 1351.  The court also remanded Commerce's determination not to apply the trading company regulation for reconsideration or further explanation.  *Id.* at 1352–54.

On remand, Commerce reconsidered both determinations.  Commerce first found it appropriate to apply the trading company regulation to "account for the subsidy benefits provided to the unaffiliated Canadian suppliers of lumber" that D&G/Portbec exported to the United States either with or without minimal additional processing.  Final Results of Redetermination Pursuant to Ct. Remand (Sept. 10, 2024) ("Second Remand

Results") at 9, ECF No. 255-1.[8]  Commerce subsequently found no need to reconsider

its position with respect to upstream subsidies but nevertheless explained that an

upstream subsidy allegation was *not* necessary for the agency to investigate certain

supplier subsidies in this case.  *Id.* at 10, 16.  Because any alleged subsidies related to

D&G/Portbec's purchases of subject lumber from unaffiliated Canadian suppliers, *id.* at

14, Commerce concluded that such lumber was not "an input into subject merchandise"

for purposes of 19 U.S.C. § 1677-1(a)(1), *id.* at 16.  Commerce disagreed with

D&G/Portbec's arguments to the contrary.  *See id.* at 16–18.

The court sustained these determinations but remanded Commerce's subsidy

calculation methodology.  *Comm. Overseeing Action for Lumber Int'l Trade*

*Investigations or Negots. v. United States* (*Coalition VIII*), 49 CIT __, __, 755 F. Supp.

3d 1317, 1328 (2025).  While D&G/Portbec represented in a footnote that their "support

[of the Second Remand Results] . . . does not include agreement with or acquiescence

in Commerce's decisions regarding the passthrough of subsidy benefits from

unaffiliated suppliers to D&G/Portbec," Cmts. of Def.-Ints. [D&G/Portbec] in Supp. of

[Second Remand Results] ("D&G Second Remand Cmts.") at 1 n.1, ECF No. 264, the

Respondents presented no substantive arguments on the issue.  Thus, with respect to

upstream subsidies, the court stated that "[n]o party challenges [that] aspect of

---

[8] While this was Commerce's second remand redetermination in this action, it was the first redetermination involving Commerce's subsidy calculations following the U.S. Court of Appeals for the Federal Circuit's reversal of this court's holding on the lawfulness of the expedited review regulation.  Commerce's first remand redetermination in this action is immaterial to the issues addressed herein.

Commerce's [Second] Remand Results." *Coalition VIII*, 755 F. Supp. 3d at 1324. In contrast, D&G/Portbec did argue that if the court remanded Commerce's calculation methodology, Commerce should account for Portbec's purchases of lumber in the United States. D&G Second Remand Cmts. at 3. D&G/Portbec opined that "[w]ith this necessary correction," they would retain their *de minimis* subsidy rate. *Id.* Accordingly, when the court remanded Commerce's calculation methodology, the court permitted "Commerce, on remand, to determine whether it is appropriate to entertain D&G/Portbec's argument at this stage of the proceeding." *Coalition VIII*, 755 F. Supp. 3d at 1327.[9]

Commerce's third redetermination came before the court in April 2025. Final Results of Redetermination Pursuant to Ct. Remand (Apr. 21, 2025) ("Third Remand Results"), ECF No. 309-1. During the remand proceeding, for the first time, Commerce calculated an above-*de minimis* subsidy rate for D&G/Portbec. *See id.* at 9 & n.37 (referencing the agency's draft remand calculations). That rate meant that D&G/Portbec were no longer eligible for exclusion from the *CVD Order* pursuant to 19 C.F.R. § 351.214(k)(3)(iv). *See Final Results*, 84 Fed. Reg. at 32,122. Despite the increased rate, D&G/Portbec merely noted their continued disagreement regarding the upstream subsidy issue in a footnote in their comments to Commerce, stating that they do "not concede that [the companies] benefitted from any subsidy by purchasing lumber

---

[9] The court also granted the Coalition's motion for leave to file a reply to this argument in lieu of striking the argument as an untimely objection to the Second Remand Results. *Coalition VIII*, 755 F. Supp. 3d at 1325–27.

. . . at arm's length from unaffiliated suppliers . . . in Canada."  Cmts. on the Draft

Results of Redetermination Pursuant to Ct. Remand (Apr. 1, 2025) ("D&G Cmts. on

Third Draft Remand") at 9 n.27, 3PRR 7, 3RCJA Tab 8.   D&G/Portbec also challenged

Commerce's application of the trading company regulation to purchases of lumber on

which Portbec conducted "minor processing" without additional evidence regarding "the

degree of processing."  *Id*. at 10.  Absent such evidence, D&G/Portbec argued,

Commerce needed to find the conditions for an upstream subsidy pursuant to 19 C.F.R.

§ 351.523[10] to have been met.  *Id.*  D&G/Portbec did not, however, urge Commerce to

reconsider its position in the Second Remand Results that subject lumber is not an

upstream "input" into the subject merchandise for purposes of 19 U.S.C. § 1677-1(a)(1).

*See id.*

Before the court, D&G/Portbec argued that Commerce had failed to address their

arguments concerning the upstream subsidy provision.  Cmts. of Def.-Ints.

D&G/Portbec in Opp'n to Final Results of Redetermination Pursuant to Ct. Remand

("D&G Third Remand Cmts.") at 10, ECF No. 311.  The court stated that no party had

challenged Commerce's statutory interpretation in their comments on the Second

Remand Results and thus posited, but did not hold, that the argument had been

forfeited.  *Coalition X*, 813 F. Supp. 3d at 1329 n.18.  Regarding D&G/Portbec's

argument that Commerce's reconsidered position "departs from Commerce's prior

position that the remanufacturing was significant enough to require an upstream subsidy

---

[10] Section 351.523 governs Commerce's investigation of upstream subsidies for
purposes of 19 U.S.C. § 1677-1.  *See* 19 C.F.R. § 351.523(a)(1).

allegation," D&G Third Remand Cmts. at 11, the court stated, to the contrary, that Commerce's explanation "align[ed] the agency's current position with earlier agency statements regarding the nature of subject merchandise as an input (or not)," *Coalition X*, 813 F. Supp. 3d at 1329 n.18.

On the limited issue remanded to the agency and at issue here, D&G/Portbec obtained a subsidy rate reduction from Commerce but remained in the *CVD Order*. *See* Fourth Remand Results at 14. D&G/Portbec did not object to any aspect of Commerce's draft redetermination but expressed their position in a footnote that an upstream subsidy allegation is required for subsidies on remanufactured lumber to be included in the subsidy calculations. Cmts. on the Draft Results of Redetermination Pursuant to Ct. Remand (Mar. 24, 2026) ("D&G Cmts. on Fourth Draft Remand") at 2 n.1, 4PRR 3, 4RPJA Tab 11.

## DISCUSSION

### I.        Parties' Contentions

D&G/Portbec seek another remand for "Commerce to reconsider or further explain its decision not to require an upstream subsidy allegation" from the Coalition before the agency accounted for any subsidies to suppliers of lumber that underwent additional processing prior to exportation to the United States. D&G Opp'n Cmts. at 2. D&G/Portbec contend that the court improperly dismissed this argument as forfeited in *Coalition X* and that D&G/Portbec were precluded from raising this argument while they retained their *de minimis* rate. *Id.* at 2–4. D&G/Portbec assert that Commerce has failed to explain why treating the respondents as trading companies pursuant to the

agency's regulatory authority is consistent with the statute governing upstream subsidies.[11]  *Id.* at 4–6.

The Government contends that the court has addressed, and rejected, D&G/Portbec's arguments regarding the upstream subsidy issue on the merits.  Def. Reply Cmts. at 8.  To the extent disagreement remains, the Government argues that D&G/Portbec should have raised their arguments earlier, in this litigation generally and within the fourth remand proceeding.  *Id.* at 9–10.

The Coalition agrees with the Government that D&G/Portbec have had several opportunities to raise arguments regarding upstream subsidies.  Pl. Reply Cmts. at 3–5. The Coalition further argues that D&G/Portbec are advancing, "for the first time, an argument concerning the statutory interpretation of 19 U.S.C. § 1677-1" that the court should reject in the event the court reaches the merits of that interpretation.  *Id.* at 7;

---

[11] D&G/Portbec's assertion that "Commerce stated that it found the issue 'moot' and did not further address it," D&G Opp'n Cmts. at 5 (citing *Coalition VIII*, 755 F. Supp. 3d at 1323), mischaracterizes both the agency's determination and the court's opinion. Commerce responded to D&G/Portbec's arguments on its draft redetermination by explaining that "'regardless of the level of processing' performed on lumber purchased from unaffiliated suppliers, those exports of 'subject merchandise [were] produced by unaffiliated Canadian suppliers.'" *Coalition VIII*, 755 F. Supp. 3d at 1323 (quoting Second Remand Results at 15) (alteration in original).  Moreover, the court acknowledged that "Commerce found any reconsideration of the need for an upstream subsidy allegation to be moot in light of the agency's application of 19 C.F.R. § 351.525(c) [the trading company regulation]."  *Id.*  Thus, Commerce applied its trading company regulation when Respondents "purchased lumber from unaffiliated Canadian suppliers" because that regulation "directs Commerce simply to cumulate benefits provided to a trading company exporting subject merchandise with subsidies provided to the producer of subject merchandise that is sold through the trading company, regardless of whether the trading company and the producing firm are affiliated." Second Remand Results at 17.

*see also id.* at 7–9 (explaining why the court should not adopt D&G/Portbec's interpretation if the court interprets the statute pursuant to *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024)).

## II.        Analysis

As discussed above, Commerce first reconsidered its position with respect to the application of the upstream subsidy provision to purchased lumber during the second remand proceeding. *See* Second Remand Results at 10, 16–18.  There was no substantive challenge to that aspect of the redetermination and Commerce's position otherwise appeared in accordance with the law, thus, there was no reason for the court to require any further consideration by the agency when the court issued the *Coalition VIII* remand order.  Indeed, the court had initially remanded Commerce's determination for the agency to "reconcile its position with seemingly inconsistent earlier agency statements," *see Coalition VII*, 701 F. Supp. 3d at 1351, and the agency did just that, *see* Second Remand Results at 10, 16.

D&G/Portbec rely on *Royal Thai Gov't v. United States*, 38 CIT 649, 978 F. Supp. 2d 1330 (2014), to argue that standing requirements precluded them from raising an affirmative challenge to Commerce's Second Remand Results because they retained their *de minimis* subsidy rate in that determination.  D&G Opp'n Cmts. at 2–3.  In *Royal Thai*, the court dismissed an action brought by a plaintiff that had succeeded in obtaining a *de minimis* rate in a countervailing duty investigation determination.  38 CIT at 649–50, 978 F. Supp. 2d at 1332.  The plaintiff sought to challenge certain aspects of Commerce's determination to obtain an even lower rate in the event the petitioners

succeeded in their parallel challenge to the negative determination. *Id.* at 650, 978 F. Supp. 2d at 1332. The court explained that if the petitioner succeeded in the parallel appeal, "Commerce [would be] required to publish a redetermination on remand" and the plaintiff, who was a defendant-intervenor in that appeal, would have the "right to challenge that redetermination, *either during the course of any remand* or in a new suit." *Id.* at 652, 978 F. Supp. 2d at 1334 (emphasis added). That is precisely what happened here: the Coalition succeeded in its appeal of D&G/Portbec's *de minimis* subsidy rate and Commerce calculated an above-*de minimis* rate for the Respondents on remand. Thus, *Royal Thai* does not support D&G/Portbec's position, and in fact, undermines it, because that opinion indicates that the issue for D&G/Portbec is not standing, but timing.

The court need not, however, determine whether D&G/Portbec should have alerted the court to the substance of any partial opposition to Commerce's Second Remand Results at that time because D&G/Portbec do not explain why they failed to assert their current argument in opposition to Commerce's third and fourth remand proceedings during which they received an above-*de minimis* rate.

D&G/Portbec seek to argue that the upstream subsidy provision, instead of the trading company regulation, applies to their purchases of lumber on which they conducted additional processing, because "the lumber D&G/Portbec purchase[d] from unaffiliated Canadian suppliers for remanufacturing is an input product" for purposes of

the statute.  D&G Opp'n Cmts. at 6.[12]  In other words, the Respondents argue that lumber that would otherwise be subject to the underlying order must be treated as an input to the subject merchandise regardless of the degree of processing performed on that lumber; in short, their view is that Commerce's interpretation of the statute in the Second Remand Results was wrong.  *See id.*

Until now, however, D&G/Portbec arguably disputed, if anything, the factual but not the legal basis for Commerce's determination.  *See* D&G Cmts. on Third Draft Remand at 10 (claiming the need for evidence about the "the degree of processing"); D&G Third Remand Cmts. at 10–11 (arguing that Commerce failed to identify record evidence supporting that "D&G/Portbec conducted only minor processing" or explain why it chose to depart from the agency's "prior position that the remanufacturing was significant enough to require an upstream subsidy allegation").  During the most recent remand proceeding, D&G/Portbec referenced the issue in passing in a footnote despite it being clear that they would continue to remain in the *CVD Order* while prevailing on the matter Commerce addressed on remand.  *See* D&G Cmts. on Fourth Draft Remand at 2 n.1.

---

[12] At times, D&G/Portbec suggest that they take issue with Commerce's application of the trading company regulation to lumber that was *not* further processed, D&G Opp'n Cmts. at 4 (referring to "purchases [of] finished lumber or lumber D&G/Portbec remanufactures"), but their argument that the upstream subsidy provision applies instead of the trading company regulation pertains only to remanufactured lumber, *see id.* at 6 (stating that "lumber that D&G/Portbec purchased from unaffiliated suppliers for remanufacture is 'a product'" used to manufacture lumber for purposes of the upstream subsidy provision).

"[P]arties having notice of an issue may not withhold pertinent arguments at the administrative level, seeking a new 'bite at the apple' before the courts." *Coalition VII*, 701 F. Supp. 3d at 1356 (alteration in original) (citation omitted). The requirement for D&G/Portbec to adequately and timely raise all arguments regarding the upstream subsidy provision is particularly important here because further consideration of that issue could have affected Commerce's subsidy calculations in its third and fourth redeterminations. D&G/Portbec's patchwork of references is not enough to preserve the issue.[13] *See, e.g.*, *L.A. Tucker Truck Lines, Inc.*, 344 U.S. at 36–37; *Great Am. Ins. Co. of New York*, 738 F.3d at 1328.

*Loper Bright* does not automatically excuse parties from exhausting their arguments on matters of statutory interpretation. While the "pure question of law" exception to the administrative exhaustion doctrine may apply when the argument requires no "further agency involvement," applying the exception "must neither create undue delay nor cause expenditure of scarce party time and

---

[13] As a general rule "an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944); *see also Bldg. Sys. de Mexico, S.A. de C.V. v. United States*, 44 CIT __, __, 476 F. Supp. 3d 1401, 1410 (2020) ("[A] defendant-intervenor may not expand the issues before the court."). In this case, D&G/Portbec intervened in defense of Commerce's *Final Results* and their *de minimis* overall subsidy rate. *See* Consent Mot. to Intervene, ECF No. 25; Order (July 19, 2019), ECF No. 43. At no time did any party argue that D&G/Portbec's arguments in opposition to Commerce's upstream subsidy position could not have been raised in opposition to the draft remand results in either the third or fourth remand proceeding or otherwise required the commencement of a new, separate action, and the court declines to elevate form over function only to reach the same result. *Cf.* USCIT Rule 1.

resources." *Thai I-Mei Frozen Foods Co. v. United States*, 31 CIT 334, 359, 477 F. Supp. 2d 1332, 1354–55 (2007). Neither of those requirements are met here. The court's exercise of its "independent judgment in determining the meaning of statutory provisions" may benefit "from the interpretations of those responsible for implementing particular statutes." *Loper Bright*, 603 U.S. at 394. "In an agency case in particular, the court will go about its task with the agency's body of experience and informed judgment, among other information, at its disposal." *Id.* at 402 (internal quotation marks and citation omitted). Moreover, considerations of judicial efficiency and preservation of resources are particularly important here in light of this case's extensive history. *Cf. Coalition X*, 813 F. Supp. 3d at 1328 (finding it "a close call" whether to order another remand based on "D&G/Portbec's failure to build the record" earlier in the litigation). Applying the doctrines of forfeiture and administrative exhaustion, the court will not remand the matter to Commerce for its fifth redetermination.[14]

D&G/Portbec otherwise support Commerce's Fourth Remand Results with respect to the remanded issue—the deduction of C$5,317,890 in lumber purchased from unaffiliated Canadian suppliers in the United States from the subsidy calculations. D&G Opp'n Cmts. at 7. No party objects to that aspect of Commerce's calculations.

---

[14] The court need not, and thus does not, decide whether the law of the case doctrine precludes consideration of D&G/Portbec's arguments. *See Ford Motor Co. v. United States*, 809 F.3d 1320, 1324 (Fed. Cir. 2016) (explaining that the law of the case doctrine applies only "to issues that were actually decided, either explicitly or by necessary implication, in the earlier litigation") (citation omitted).

Because Commerce's determination is supported by substantial evidence, Fourth

Remand Results at 7–11, and is otherwise in accordance with law, it will be sustained.

### CONCLUSION

In accordance with the foregoing, the court will sustain Commerce's *Final Results*

as amended by the second, third, and fourth redeterminations on remand.  Judgment

will be entered accordingly.

/s/     Mark A. Barnett
Mark A. Barnett, Chief Judge

Dated: July 21, 2026
     New York, New York